```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
ADAM SMITH, FRANK D'ANGELO, and DAWN     :   13 Civ. 3888 (DLC)
JASPER,                                  :
                 Plaintiffs,             :
                                         :   OPINION & ORDER
       -v-                               :
                                         :
MIKKI MORE, LLC, VINCENT PACIFICO, and   :
DARIAN BRAUN,                            :
                 Defendants.             :
                                         :
---------------------------------------- X
```

APPEARANCES:

For plaintiffs:

Romeo Salta
Charles H. Knull
630 9th Ave., Ste. 405
New York, NY 10036

For defendant Pacifico:

Frank M. Graziadei
130 Water St., Ste. 10B
New York, NY 10005

DENISE COTE, District Judge:

On February 7, 2014, defendant Vincent Pacifico ("Pacifico") moved to dismiss plaintiffs' Second Amended Complaint. For the reasons below, Pacifico's motion is granted as to Count IV and otherwise denied.

## BACKGROUND

Plaintiffs Adam Smith ("Smith"), Frank D'Angelo ("D'Angelo"), and Dawn Jasper ("Jasper") allege the following

facts in their Second Amended Complaint ("SAC").  Between May 31, 2011 and January 2012, plaintiffs created wholly original label designs (the "Label Materials"), packaging, advertisements, and a website (the "Website") to promote and market defendants' Mikki More hair-care products.  D'Angelo also negotiated with retail outlets to place Mikki More products; oversaw and approved Mikki More packaging, as well as a marketing and promotional campaign for Mikki More; and paid for certain expenses related to the Mikki More venture totaling several thousand dollars.  On November 17, 2011, D'Angelo and defendant Darian Braun ("Braun") agreed that, as payment, D'Angelo was to receive 20% of the outstanding shares of Rock Care Corp. ("Rock Care"), a New York corporation owned by Braun that controlled the manufacture, promotion, marketing, and sale of the Mikki More hair-care product line.  On December 12, 2011, Braun delivered a share certificate for a 2% interest in Rock Care.  D'Angelo repeatedly demanded the promised 20% interest; Braun subsequently admitted on several occasions that he had promised D'Angelo 20%, not 2%, but refused to transfer the balance.  Jasper was also promised payment for creation of the Website, but was never paid.

In July 2012, D'Angelo sought assistance from his long-time friend, defendant Pacifico.  D'Angelo explained that plaintiffs had created the Label Materials, store displays, advertising and

2

promotional campaigns, and the Website; that in exchange Braun had promised 20% of the net proceeds of the Mikki More venture; and that Braun had refused to compensate plaintiffs as promised. Pacifico told D'Angelo he would investigate and attempt to settle the dispute.

Instead, in August 2012, Pacifico struck a deal with Braun. Pacifico formed defendant Mikki More LLC and acquired on behalf of the LLC all rights to the Mikki More products from Rock Care. Braun was compensated by Pacifico for an interest in Mikki More LLC; Braun kept a 50% interest in the LLC. At the time, Pacifico knew that he and Braun would be using unauthorized, copyrighted works created by plaintiffs, including the Label Materials and Website, for labeling, advertising, and promotion of the Mikki More products.

Thereafter, Braun and Pacifico learned that high-resolution digital files of plaintiffs' work were required. Braun personally promised plaintiffs to pay outstanding fees in order to obtain from plaintiffs these high-resolution files. Braun also promised Jasper additional payment for managing Mikki More's Facebook page, its Twitter account, and other social media marketing. Because Braun did not pay these fees, plaintiffs refused to hand over the files. Braun and Pacifico then agreed to hire Troy Hahn ("Hahn") to re-create the digital files using copies of the copyrighted works. Plaintiffs attach

3

to the SAC a copy of the check issued to Hahn for this work, as well as the envelope enclosing that check, which plaintiffs allege was sent from Pacifico's office.

D'Angelo and Smith applied to the United States Copyright Office for registration of copyright in the "text" and "2-D artwork" in the Label Materials and received Registration Number VAu 1-137-371, effective April 3, 2013 (the "Label Materials Copyright").  D'Angelo, Smith, and Jasper applied for registration of copyright in "text" and "2-D artwork" in the Website and received Registration Number VAu 1-137-618, effective April 16, 2013 (the "Website Copyright").  Copies of both registration statements, and of the deposits of material covered by those registrations, are attached to the SAC.  In particular, Exhibit B to the SAC includes advertising, packaging, and labels for Mikki More products, photographs of Ricky's NYC storefronts showing the claimed advertising for Mikki More in the display windows, and a design with two linked orange spirals against a black background that appears in many of the claimed advertisements, packages, and labels.  Exhibit D includes pages of the Website, which include some of the text and 2-D artwork in Exhibit B.

Defendants have made copies and derivative works from the Label Materials without plaintiffs' permission as they continue to use the Label Materials on Mikki More products, in Mikki More

4

advertisements, and in Mikki More marketing materials.  In particular, copies or derivative works from the Label Materials appear in various Ricky's stores in New York City, in the beauty industry publication Paramount, and on the Mikki More Facebook page.  Defendants have also made copies or derivative works from the Website without plaintiffs' permission, including on Mikki More's own website and on the Mikki More Facebook page.

On June 6, 2013, plaintiffs brought the instant suit against defendants for infringement of both of the above copyrights, for breach of contract, and for relief on theories of unjust enrichment and quantum meruit.  Plaintiffs' SAC was filed December 30, 2013.[1]  Fact discovery closed on February 28.  Shortly before, on February 7, Pacifico moved for judgment on the pleadings.  For the reasons set out below, that motion is granted in part.

---

[1] The SAC is comprised of six counts, as follows.  Count I, styled "infringement of copyright," is for the unauthorized copying of the Label Materials.  Count II, "infringement of copyright," is for unauthorized copying of the Website.  Count III, "contributory copyright infringement," is for retaining Hahn to re-create high-resolution digital versions of the copyrighted materials.  Count IV, "breach of contract," concerns Braun's failure to deliver to D'Angelo 20% of the net proceeds of the Mikki More venture or compensation received from sale of the rights to the Mikki More product line to Mikki More LLC.  Count V, "unjust enrichment," and Count VI, "quantum meruit," seek to recover for D'Angelo's contribution of marketing strategies, product ideas, and other efforts in the launching of the Mikki More product line.

**DISCUSSION**

When considering a motion to dismiss, a court must accept as true all allegations in the complaint and draw all reasonable inferences in the plaintiffs' favor.  Keiler v. Harlequin Enters. Ltd, --- F.3d ---, 2014 WL 1704474, at *3 (2d Cir. May 1, 2014).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted); see Alcantara v. Bakery & Confectionery Union & Indus. Int'l Pension Fund Pension Plan, --- F.3d ---, 2014 WL 1705015, at *2 (2d Cir. May 1, 2014) (recognizing that courts are to apply the "same standard" to motions brought under Rules 12(b)(6) and 12(c)).  The court is "not bound to accept as true a legal conclusion couched as a factual allegation."  Iqbal, 556 U.S. at 678 (citation omitted).  Accordingly, a court may disregard "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Id.

Applying the plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 679.  "Plausibility depends on a host of considerations:  the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so

6

obvious that they render plaintiff's inferences unreasonable." Fink v. Time Warner Cable, 714 F.3d 739, 741 (2d Cir. 2013) (citation omitted). Although the focus should be on the pleadings in considering a motion to dismiss, the court will deem the complaint to include "any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011) (citation omitted).

**I.   Counts I to III: Copyright Infringement**

A certificate of registration made within five years after the first publication of a work is prima facie evidence of the validity of a copyright. 17 U.S.C. § 410(c). Copyright protection extends only to "original" works. Certificates of registration are also prima facie evidence of the originality of a work. Boisson v. Banian, Ltd., 273 F.3d 262, 268 (2d Cir. 2001). Regardless of whether a work, or an element within a work, is "novel or unique," it is "original" if it was "independently created by its author," rather than "copied from pre-existing works," and "comes from the exercise of the creative powers of the author's mind." Id.

To establish direct copyright infringement, a plaintiff must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Artista

7

Records, LLC v. Doe 3, 604 F.3d 110, 117 (2d Cir. 2010) (citation omitted).  Under common law tort principles, a defendant is liable for contributory infringement if, "with knowledge of the infringing activity, [the defendant] induces, causes or materially contributes to the infringing conduct of another."  Id. (citation and emphasis omitted).  The knowledge standard is objective, and includes persons who "know or have reason to know of the direct infringement."  Id. at 118 (citation omitted).  A defendant with such knowledge is liable where the defendant "engages in personal conduct that encourages or assists the infringement."  Id. (citation omitted).  In deciding whether liability should attach for certain contributory conduct, courts look to "the function that the alleged infringer plays in the total reproduction process."  Id. (citation omitted).

Similarly, a defendant is vicariously liable for infringement where "the right and ability to supervise coalesce with an obvious and direct financial interest in the exploitation of copyrighted materials -- even in the absence of actual knowledge that the copyright monopoly is being impaired." Viacom Int'l, Inc. v. YouTube, Inc., 676 F.3d 19, 36 (2d Cir. 2012) (citation omitted).  "Individual officers of a corporation will be vicariously liable for the corporation's infringing conduct" under these circumstances.  Jonathan Adler Enters., LLC

8

v. Ins & Outs Pottery, Inc., 12 Civ. 4866 (DLC), 2012 WL 4471540, at *1; accord Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc., 118 F.3d 955, 971 (2d Cir. 1997) (applying this test in analysis of corporation's president's vicarious liability for copyright infringement by corporation).

Plaintiffs here have adequately pleaded their claims in Counts I to III against Pacifico, charging him with copyright infringement for copying the Label Materials and the Website and for hiring Hahn to re-create high-resolution digital files of these works.  No party disputes that the Label Materials Copyright and the Website Copyright are valid, or that the SAC adequately alleges that the packaging and advertising for Mikki More products continue to use the Label Materials and that Mikki More's website and Facebook page copy or derive from the Website designed by plaintiffs.  Pacifico was well aware of this alleged infringement, as it was plaintiffs' complaints about it that led Pacifico to purchase a stake in the Mikki More product line.  And Pacifico was an active participant in this infringement: Pacifico agreed with Braun to hire Hahn to re-create high-resolution digital files of plaintiffs' work, and it was Pacifico himself who wrote the check to Hahn.

Pacifico's arguments to the contrary are unavailing. Pacifico first argues that Counts I to III fail to state a claim because plaintiffs do not allege "which specific works are the

9

subject of their claims" as they "do not allege that everything contained in either the [Label Materials] or in the [Website] is original and copyrightable and protected by the registered copyrights."  In particular, Pacifico notes that some of the copyrighted text in the Label Materials and Website "includes non-original . . . phrases" such as "leave-in conditioner," "volumizing hair spray," and "coming soon," and complains that plaintiffs have not given him notice of what aspects of the "2-D artwork" are claimed to be original.  The Label Materials Copyright and Website Copyrights constitute prima facie evidence of originality of the claimed "text" and "2-D artwork."  Fairly read, the SAC alleges that, without authorization, defendants have repeatedly copied the Label Materials and the Website in their entirety.  This more than suffices to adequately allege that protected work was copied.

   Pacifico also contends that plaintiffs fail to allege "what he actually did to participate in or cause the alleged infringement."  To the contrary, plaintiffs allege that shortly after learning about this infringement, Pacifico decided to invest in Mikki More knowing that plaintiffs' work would continue to be used for advertising, packaging, labels, and the internet.  Plaintiffs also allege that Pacifico agreed with Braun to hire Hahn to create high-resolution files of plaintiffs' work and that Pacifico himself sent a check to Hahn

10

for this work.  Pacifico argues that this allegation is "directly contradicted" by the check itself, which reads "Mikki More LLC" at the top.  Pacifico is mistaken.  This does not contradict plaintiffs' allegation that Pacifico was the one to "send the check to Troy Hahn" from Pacifico's office.  These allegations adequately support the claims in Counts I to III against Pacifico.

## II.  Count IV: Breach of Contract

Under New York law,[2] a breach of contract claim requires proof of "(1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." Fischer & Mandell, LLP v. Citibank, N.A., 632 F.3d 793, 799 (2d Cir. 2011) (citation omitted).  As Pacifico notes, it is not clear from the SAC whether plaintiffs bring their breach of contract claim against Pacifico.  Plaintiffs allege that D'Angelo and Braun agreed that, in exchange for D'Angelo services, he was to receive "twenty percent of the outstanding shares of Rock Care Corp." or "twenty percent of the net profits of the [Mikki More] venture"; that D'Angelo performed the

---

[2] Pacifico cites New York law in support of its argument for dismissal of the breach of contract claim.  Plaintiffs do not dispute that New York law applies to the contract.  Both parties cite New York law in their arguments concerning plaintiffs' quasi-contract claim.  "[W]here the parties agree that New York law controls, this is sufficient to establish choice of law." Fed. Ins. Co. v. Am. Home Assurance Co., 639 F.3d 557, 566 (2d Cir. 2011).

11

promised services; and that "Braun reneged," giving D'Angelo only a 2% interest in Rock Care Corp., and accordingly "breached his contract," causing D'Angelo to suffer damages.

Plaintiffs have not alleged any agreement with Pacifico. Nor do plaintiffs allege a sufficient factual basis for imputing Braun's agreement to Pacifico. In their opposition to the instant motion, plaintiffs do not offer any basis for holding Pacifico liable for Braun's agreement. Rather, plaintiffs ask "that this issue be held in abeyance . . . until discovery is completed," and state that they will withdraw this claim as to Pacifico if, "after discovery, it is clear Defendant Pacifico had nothing to do with or benefitted from, the Braun-D'Angelo deal." Notably, fact discovery closed on February 28, the same day plaintiffs filed their opposition to Pacifico's motion to dismiss. Regardless, plaintiffs do not dispute that their allegations in the SAC do not state a claim as to Pacifico on the breach of contract claim. Accordingly, Count IV of the SAC is dismissed as to Pacifico.

**III. Counts V to VI: Unjust Enrichment and <u>Quantum Meruit</u>**

A plaintiff may recover for unjust enrichment in New York after establishing three elements: (1) the defendant benefitted (2) at the plaintiff's expense, and (3) equity and good conscience require restitution. <u>Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of NJ, Inc.</u>, 448 F.3d 573, 586

12

(2d Cir. 2006). Plaintiff need not be in privity with the defendant, but must "assert a connection [with defendant] that [i]s not too attenuated." Georgia Malone & Co., Inc. v. Rieder, 973 N.E.2d 743, 747 (N.Y. 2012). "The essential inquiry in any action for unjust enrichment is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." Madarin Trading Ltd. v. Wildenstein, 944 N.E.2d 1104, 1110 (N.Y. 2011) (citation omitted).

Similarly, to recover in quantum meruit in New York, a plaintiff must establish "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005) (citation omitted). Under New York law, courts may consider a plea to recover in quantum meruit "together [with an unjust enrichment theory] as a single quasi contract claim." Id. Because unjust enrichment and quantum meruit sound in quasi-contract, recovery is available only in the absence of an enforceable agreement that governs the same subject matter. Beth Israel, 448 F.3d at 586-87; Mid-Hudson, 418 F.3d at 175.

Plaintiffs' quasi-contract claim is adequately pled as to Pacifico under theories of both unjust enrichment and quantum

13

meruit.  Plaintiffs allege that Pacifico, having agreed to investigate -- on plaintiffs' behalf -- Braun's refusal to pay, instead cut a deal with Braun and purchased a stake in the Mikki More venture.  Upon learning that high-resolution copies of plaintiffs' work was required, Pacifico then hired Hahn to copy plaintiffs' materials instead of paying plaintiffs what was owed them in exchange for their original high-resolution files. Pacifico accepted a benefit from plaintiffs' work when he elected to invest in the Mikki More venture; plaintiffs, who performed their work in good faith with expectation of compensation, were never paid what was owed them; and equity requires restitution.  Thus, plaintiffs' allegations support their quasi-contract claim under both a theory of unjust enrichment and quantum meruit.

Quoting from Heller v. Kurz, 643 N.Y.S.2d 580 (1st Dep't 1996), Pacifico argues that his "enrichment was [not] unjust" because plaintiffs' work was "performed at the behest of someone other than [Pacifico]" and therefore plaintiffs should "look to that person for recovery."  Id. at 580.  Pacifico is mistaken. Heller is a very different case, concerning a plaintiff's suit against defendants with whom he had no relationship.[3]  Indeed,

---

[3] Heller concerned a plaintiff seeking, in quantum meruit, a broker's fee in connection with the underwriting of an initial public offering from those who "piggybacked the sale of their . . . own stock," which was merely "incidental" to the public

14

the First Department has recently reaffirmed that, "although a plaintiff could satisfy th[e] requirement [of a 'connection between the parties'] by alleging that the benefit was conferred at the behest of the defendant, the Court of Appeals has never required such a relationship."  Philips Int'l Investments, LLC v. Pektor, 982 N.Y.S.2d 98, 102-03 (1st Dep't 2014) (citation omitted).  Here, the relationship between Pacifico and plaintiffs is far from attenuated.  Pacifico became involved with the Mikki More venture because plaintiffs asked him for help, and he elected to purchase a stake knowing that plaintiffs had not been paid for their work on Mikki More's advertising, labels, packaging, and website.  Any ensuing benefit to Pacifico was manifestly unjust.

Pacifico also argues that he only benefitted from plaintiffs' work as a shareholder of Mikki More LLC and that benefits to a shareholder cannot establish a basis for liability in quasi-contract.  Pacifico's only citation in support of this proposition is to LeBoeuf, Lamb, Greene & MacRae, LLP v.

---

offering.  643 N.Y.S.2d at 580.  It was understood that plaintiff would be acting on behalf of the corporation and "would be taken care of by [the corporation]."  Id.  The court noted "the sale of stock is an inherently corporate function, and it is only logical that any expenses incurred in connection with the underwriting would be borne by the corporation."  Id.  Accordingly, the court held that plaintiff should look to the corporation for remuneration, not to those who happened to sell their stock at the same time as the public offering.

Worsham, 185 F.3d 61 (2d Cir. 1999), which held summary judgment for plaintiff law firm inappropriate where it was unclear whether the law firm had offered its services to corporations, their principal shareholder, or to both.  Id. at 66.  This does not constitute a holding that a benefit to a corporation may never "benefit" a shareholder.

Here, although Pacifico is a shareholder of Mikki More LLC, plaintiffs do not seek to recover from Pacifico because he is a shareholder.  Rather, drawing all inferences in favor of plaintiffs, Pacifico created Mikki More LLC and purchased his stake in the Mikki More venture with full knowledge of Braun's failure to pay plaintiffs for their work, intending to take for himself some of the unjust enrichment Braun enjoyed as a result of plaintiffs' uncompensated work.  Although Pacifico structured the transaction to ensure that the benefits to him would pass through Mikki More LLC, it was Pacifico's own acts, seeking to capture a benefit from plaintiffs' work, that render his enrichment unjust.

In making the above argument, Pacifico notes that "[a] limited liability company, like a corporation, is an entity created to eliminate personal member/interest owner liability."  Even if plaintiffs could only reach Pacifico by piercing the corporate veil, they have alleged sufficient facts to do so.  Pacifico created Mikki More LLC as the vehicle for his

16

investment in the Mikki More venture, knowing that he would be participating in the infringement of plaintiffs' rights. It is reasonable to infer that one of Pacifico's motives in creating the limited liability company was to avoid personal liability for such infringement. A court sitting in equity is empowered to pierce the corporate veil in such circumstances. See ABN AMRO Bank, N.V. v. MBIA Inc., 17 N.Y.3d 208, 229 (2011) (holding veil piercing is appropriate where "owners, through their domination, abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against [plaintiff]" (citation omitted)).

Finally, Pacifico argues that plaintiffs are not entitled to recovery in quantum meruit because they have "fail[ed] to allege the reasonable value of the services [they] provided." Although, at trial, plaintiffs will have the burden of establishing the reasonable value of their services, they need not meet that burden at the pleading stage. The cases Pacifico cites are not to the contrary. Plaintiffs attach to the SAC copies of the work they performed for defendants, and it is quite plausible that they will be able to meet their burden at trial. They need not allege a right to a specific dollar amount to survive a motion to dismiss. Accordingly, Pacifico's motion is denied as to plaintiffs' quasi-contract claim.

## CONCLUSION

Pacifico's February 7 motion to dismiss the Second Amended Complaint is granted as to Count IV and otherwise denied.

Dated:    New York, New York
          May 9, 2014

```
              _____
                     DENISE COTE
              United States District Judge
```

18